And the next case on our calendar is United States v. Joseph Ticano III. Thank you. Ah, Mr. Karashevsky, you're here for the day. Good morning. Good morning. May it please the court. My name is Gary Stein and I represent defendant appellant Joseph Tigano. We said it in our brief and the government didn't contest it. The delay in this case is unprecedented in this court's speedy trial jurisprudence. Have you found any case where it was longer than seven years without a trial, pre-trial confinement? Not where that became an issue, a speedy trial issue. No, Your Honor, we have not found a single case either in this court or I think it's safe to say around the country. And the fact that he remained incarcerated for seven years while waiting for a one-week trial after repeatedly demanding a speedy trial represents a breakdown of how our criminal justice system is supposed to work and a clear violation of his constitutional rights. Could we view this case in the same light we would if he had been, if the jury had found that he wasn't guilty? I mean, in effect, there's no prejudice here because all this time pre-trial is now credited to the defendant as a result of his sentence. So that's at least worth something in the terms of the balance of factors that we would look at here, I think. Not under the prejudice prong under Barker being what we can go the way the court has defined that and the way the constitution intends it. And to be clear, Your Honor, we don't agree with the premise that he was properly convicted. We have a challenge to the search warrant and if that's thrown out, he was not guilty. But putting that aside, a defendant's entitlement to a speedy trial does not depend on whether he was properly convicted. There's no authority that I'm aware of that says the speedy trial clause only protects innocent defendants and not guilty ones. And in fact, Barker says the exact opposite. Barker says that imposing these consequences, and it is specifically talking about the prejudice in this case, lengthy pre-trial incarceration, on anyone who hasn't been convicted is serious, not just the innocent. Who was responsible for these delays? The government is saying that this had to do with the fact that there were two magistrate judges assigned at different times and that McCarthy had to review Scott and the warrant and that was separated and there were delays there and there were delays eventually getting to trial at the end, but that the speedy trial clock was meticulously followed throughout with appropriate exclusions for motions, et cetera, including the motions of the defendant's father. And so most of this time is explicable, right? I mean, there may be certain times when there are gaps, but not significant ones compared to what . . . So what you're saying is that if the court system is beleaguered because of delays, because of absence of judges, because of a procedural problem that was perceived in terms of who to assign, which magistrate judges to assign, that that somehow inures to the benefit of your client. Don't take my word for it, Your Honor. Take the word of this Court's precedents and Supreme Court precedent, which makes crystal clear that delays caused by overcrowded dockets, which is what the Western District was experiencing here, and there are a lot of other factors here as well, but that is held against the government. In the words of this Court in Buffalo Amusement, where there was only 31 months of delay for a defendant who was out on bail, that was all chargeable to the government's inaction, the overcrowded dockets of the Western District of New York and the trial court's failure to rule expeditiously on appellant's motions. That's well settled. And to the extent the suggestion is that because there was no Speedy Trial Act violation, there can't be a constitutional violation. Well, first of all, that's clearly not the case. Judge Winner, you said it in United States v. Bloom. The fact that there has been no violation of the Speedy Trial Act does not preclude a finding that the defendant was denied his Sixth Amendment right to a speedy trial, and the Speedy Trial Act says it itself. 18 U.S.C. 3173 says that, which was cited in your opinion, Judge Winter. And Judge Walker, there were Speedy Trial Act violations in this case, and not just the ones that we allege. There were multiple violations all along. We can't raise them for procedural reasons. The Speedy Trial Act has, and this Court's jurisprudence, has specific stringent rules on that, and we followed them in our brief. But there were lots of violations of the Speedy Trial Act, including when you get, there's a whole list, but when you get to October 2014, after Mr. Togano has been in jail for six years, after he has been repeatedly asserting his right to a speedy trial, after everything that happened in this case, it's time to set a trial. The judge doesn't set it until May of 2015, seven months away, and five months after defense counsel said he'd be available, so . . . . . . Does he state a reason on the record? Excuse me? Does he state a reason on the . . . Yes, but . . . . . . Does he state the reason on the record? That his, that his trial calendar is booked. Booked. Quote, unquote. Defense counsel says, and with respect, the government got this wrong in their brief, the government said that it was put out that far because defense counsel was not available. That is not true. Defense counsel, when, when the judge says, let's set a trial date, says, I'm ready to go and I can squeeze this in in December. Again, this is happening in October. It was because the court's calendar was booked that the trial wasn't set out until May. And, and so . . . He said he could squeeze it in and then he didn't squeeze? The defense counsel said she could squeeze it in. Oh. But the court's calendar was booked and the prosecutor also apparently had a busy trial calendar. Can you pick a date in this seven-year period in which there should have, the judge should have just ordered a trial? There were lots of such dates. Tell me one, because it seems to me, I went through this pretty carefully, that at each time there was a consideration, there was a reason why there couldn't be a trial. They were either having a hearing or there was a, a motion was pending or various, various things were happening. There were a series of entries. It wasn't as though they threw him in jail and forgot about him. There were matters being discussed and going on right from July of 08 through May of 15 when the verdict occurred. At all times here, there was, there was, there was a lot of activity in this. And yes, there were delays. There were huge delays, but in time, but overall, but that's about the only thing you have is the, is the whole, the whole period, as opposed to some evidence of bad faith on the part of somebody or, or negligence. It looked to me like everybody was paying pretty close attention to this case and act, trying to act in this, in this, in your client's best interest. Particularly with regard to the plea. Your Honor, respectfully, that's, that's not the case. And our, our brief marshaled the fact. Who's, who was, where was the bad faith? There, there, there does not have to be bad faith, Your Honor. Uh, in, in, in the cases where this court has found a speedy trial violation, like Buffalo Amusement, like Carini, like Visby, there was no bad faith. It didn't matter. The delays, the issue is whether the delays are attributable to the government. And as we explained in our brief, and we went through a painstaking review of the record, four years, at least four of these seven years are attributable to the government. In, uh, Buffalo Amusement, as I said, it was only 31 months. Um, and in the other cases it was less. And those were white collar cases where the defendants were out on bail. Um, unlike Mr. Togano. And, and, and, and, and, and so, Your Honor, you have to look at each of the delays that happened, which is what we've done in our brief, and say, is the government responsible? And the answer is yes. The government is responsible for the fact that it took two years to decide a straightforward set of pretrial motions in this case. Um, and it's because, uh, Judge Scretany, for whatever reason, it may well have included, uh, the state of his docket. I understand that. Um, referred, um, these motions to two separate magistrate judges, which just created— One of them, one of them, one of them had issued a warrant that was in question. And so that, that issue was put before another magistrate judge. It was. And that, and that decision, first of all, it took four months, Your Honor. It took four months for that to get straightened out. Number one. But did, did your, did, did, did counsel say it can't go to, it's got to stay, everything's got to stay with Scott? Um, and, and McCarthy should be involved in this? Uh, uh, defense counsel didn't say that. And, and, and. Agreed that it was appropriate for a second counsel to, uh, a second magistrate judge to be involved on that motion. No, well, Mr. Togano had been, to that point, vociferously asserting his speedy trial right. That it's not the duty of the defendant, as the Supreme Court has said, to bring himself to trial. As, as, as your, the Supreme Court has said, and as, uh, Judge Pooler, you said in the decision last year in the Burt case with Hall, the government, the court and the government has an affirmative obligation, uh, to honor the defendant's right, uh, to, to a speedy trial. And, and Judge Scrutiny should have recognized that, uh, particularly, he'd already been in, in, in jail for a while, demanding his right to a speedy trial. That dividing up the motions made no sense. It was responsible for the 117 days it took to get a transcript of the one day suppression motion. It wasn't, it wasn't Mr. Togano's fault. He asked for the transcript and it didn't come. Should the judge have said, where's the transcript? Where's the rest of what's, should the government have said? Frankly, yes. But the question, again, under Barker is, is that delay, um, uh, is it on the government's shoulders or Mr. Togano? And the answer has to be that that's on, uh, the government's shoulders. It's also on the government's shoulders that it took the prosecutor a full year to produce a plea agreement and reneged on his promises to the court to provide a plea agreement by the next conference. Um, that's directly on the government. Did anyone move to, for his release? Excuse me? Anyone move for his release? There was no, there was no such motion made below that I'm, I'm aware of, uh, that the record reflects, Your Honor. Being sent for competency evaluations. So that was going on at the same time, at least one of which was totally unnecessary and reaffirmed the opinion of the previous competency evaluation. Well, that's absolutely true, Judge Pooler. And the record is clear what was going on. And, and, and by the way, these competency hearings were not going on. That's part of the problem. He was, he was just sitting in jail. The marshals weren't even transporting him. That's, that itself is months and months and months of delay. The delays here, when you add them up. Are you objecting, if the, if the competency hearings had been rapid, like within three weeks of, of each one, would you have a problem with that, with that part of it? We would, we don't have a problem. Are you objecting to the second competency hearing? Just not the delay of part of it, but just the fact there was one. So the second and the third? Yes, Your Honor. The second one was. My understanding is that the reason that the competency hearings were ordered is because he was being given a plea offer that would result in basically half the sentence he would get if he went to trial. And, and he was, he was insisting on going to trial. To make you crazy if you don't take a plea? So, Your Honor, Your Honor. Is that what we're concluding here? Your Honor, if I, if I may, there, there are, there are, you know, there's a second competency hearing, the third competency hearing. The second competency hearing is before there was a plea offer. We say that was unnecessary and should not have been ordered because, as the prosecutor himself said on the record, it was basically ordered because he was demanding his right to a speedy trial, which is, which is not appropriate. As to the third competency hearing, yes, that was after the plea offer had been, had, had, had been extended. Now, first of all, and, and, and we think the record is clear, that there was no basis for that competency hearing. It was based on a faulty premise. The record, the record certainly shows. Is that a de novo review or do we look at that for abuse of discretion on the part of the judge? We look at it as under the Barker v. Wingo test, the reasons for the delay, is that delay attributable to the government or to the defense? I'm talking about the decision to order a competency hearing. Well, again, we're not appealing that in and of itself, but insofar as that is part of the speedy trial analysis, that's de novo review. It's based on the theory that if you do not accept a plea offer that is offered to you, that ultimately, not at your knowledge at the time, results in a shorter sentence, makes you crazy. That's right. And, and, and, and, and there's so many things that were, that were wrong about that, Your Honor. First of all, I say it was the government's responsibility because what defense counsel was trying to protect him from, as, as Your Honor explained, was an additional 10 years if he went to trial. But he should never have been in that predicament. It was a violation of DOJ policy at that time reflected in the holder memo for the government to hold the prior felony information over my client's head and, and, and, and, and, and agree to pull it if he didn't go to trial and keep the threat out there if he did go to trial. So that's really the cause of the third competency hearing. You did not change it from a 10 to a 20, the prior information? Yes, exactly. Exactly. And it was a violation. We said this in our brief. Government has not disputed. It was a violation of DOJ policy at the time. And the... Is that illegal? Does that create a legal right to the, not to have that? I mean... No, Your Honor, we're not seeking that relief on this appeal, but it does, again, inform in, in, in an important way, the analysis under Barco and the, and the important second factor of what were the reasons for the delay? Who is responsible for them? And... I've been remiss. Your term has long expired. I wasn't watching the light. Why don't you conclude with one last sentence? Well, I, I would like to conclude by talking about the, the prejudice point, because there is prejudice here. Seven years of pretrial incarceration, including four years resulting from government delay is prejudice. You don't have to show impairment to defense, to the defense. The Supreme Court has said this time and time again, that the core concern of the Speedy Trial Clause is impairment of liberty. It is not impairment of the defense. United States v. Loud Hawk, the Speedy Trial Clause's core concern is impairment of liberty. United States v. McDonald, the Sixth Amendment right to a speedy trial is not primarily intended to prevent prejudice to the defense caused by the passage of time. It is designed to minimize the possibility of lengthy incarceration prior to trial. And that's what we have here. This case is at the core of the Sixth Amendment right to a speedy trial. And if this is not a violation of that, of that right, I don't know what is. You've reserved two minutes for rebuttal, which you may continue to have. Mr. Karashevsky, seven years, seven years. Judge, 78 months, six and a half years, but I don't think that makes a difference. Just so we're clear, I don't- Is that your defense? No, it's not. It was only 68 months? No, it's not, Judge. I think what we've talked about here, and certainly one of the Barker v. Wingo factors is prejudice, whether or not the defendant was prejudiced by this. And your argument is if he was tried sooner, he would have gotten his 20-year sentence sooner and he'd still be in jail? There is no, there's nothing in the record that would suggest that the result of this case would have been any different. He would have been able to bring his appeal on the suppression motion sooner. That was flyover information that may or may not have been acceptable. But in any event, as opposing counsel just said, the Sixth Amendment right to a speedy trial implicates the right to a speedy trial, not to not get a sentence if you're convicted. It's a different right. Barker v. Wingo talks about the four factors that this court is to apply. Yes. The fourth factor being prejudice. But in a sense, and we didn't talk about the standard of review, that Mr. Dugano here is complaining about a constitutional speedy trial violation which was never raised in the district court. This court is reviewing, at best, for plain error. He was complaining about not getting a speedy trial throughout this incarceration. He said, I want my speedy trial. At the beginning, he said, I want a speedy trial. I want a speedy trial. In context, without realizing that that was going to preclude him from raising any issue with regard to suppression. He just didn't understand how it worked. He kept saying, I want a speedy trial. I want a speedy trial. The court's trying to explain to him, look, we need to go through a procedure here. What's going to be your defense? This is in the context of the pro se. His request to proceed pro se, which took up a lot of time. But you've got a situation where the judge is talking to him. How do you suppose you're going to bring that up, that you think your Fourth Amendment rights were violated? Well, I'll bring it up at trial. No, that's not how it goes. You have to make motions beforehand. And if you had an attorney at this time when he was pro se, you would be able to go through that process. He was saying, yes, I want a speedy trial. At the point where he really wasn't understanding what that meant, he still had to go through pre-trial motions. Later on, after he was represented. Is the adversary saying that there was prejudice in the sense that he was incarcerated during this period of time without a trial, with the presumption of innocence being in place, and that it was the fact of incarceration during that period that creates the prejudice? Well, and this court and the Supreme Court has recognized, certainly, that that is a form of prejudice. But isn't your answer to that? He didn't move to be released. He didn't move to be released. That's correct. And most of the time being represented by competent counsel. Counsel whose effectiveness, whose constitutional effectiveness, is not being challenged on this appeal. So we have a situation where the Sixth Amendment claim was not brought up in the district court, despite his saying, I want a speedy trial. I want a speedy trial. He was pro se, and he says to the judge, I want a speedy trial. What do you mean not brought up? It was not raised. When he did make a speedy trial motion, he brought it pro se when he was represented by counsel. This court's review. You just told me he brought it pro se before he was represented by counsel. No, what he brought up, that was not. He said, I want to go. I want my speedy trial. And he said that when he was pro se. But saying those words, it was not developed at all before the district court. You can't say the court was not on notice. But it was not presented to the court in a way that the court could rule upon it. The record was that he said it. He may have said it when he was pro se without counsel, but he also said it when he had counsel. Yes, he did. Yes, he did. When he raised, in April of 2014 or May of 2014, when he made his motion for a speedy trial, he was represented by counsel. Be that as it may, didn't the court know he was sitting in jail for seven years? I mean, the court kept saying, my docket, I can't schedule a trial. Let me send it out to the magistrate judge. Let me do another competency exam. Did the court not know that he was sitting without his liberty for 78 months? But this is in the context also in the court, and I know the court has looked at the entire record, but this is in the context of him coming to court. Monthly, it appeared, when there were problems with his father's competence. There were problems dealing with whether his father was suffering from dementia, who was his co-defendant. You had a situation there where that was occurring, and he's showing up for court at every court appearance, from December of 2012 to November of 2013, to December of 2013, showing up for every court appearance and- He was arrested in 08. Pardon me? He was arrested in 08, that's- Well, that's correct. That's already four years into his incarceration. But agreeing at each point that, okay, we have to adjourn this because of these problems relating to my father's competence. Because I still need to speak to my attorney about this. Sitting there, brought in for these appearances, counsel not objecting, and him sitting there saying, and a couple times, is that okay with you, Mr. Tigano? Yes, that's fine. So- In January of 2014, didn't his own attorney move for a competency hearing? Yes, and- Because he wouldn't accept the plea. Well, the reason for that is- His attorney doing that, that's not the judge, it's the attorney moving. His attorney made a motion, and what she said in her motion is not, he's incompetent because he won't take a plea. She, and very carefully, if you look at her motion, she said, he can't understand, he didn't understand what was going to happen at trial. He kept, he understood what the trial was, but he was insisting, my defense is the Fourth Amendment, my defense is the Fourth Amendment. And him not understanding that he wouldn't be able to present that at trial. And her trying to tell him, that's not how the trial is going to work. The previous three competency evaluations found that he was competent to assist in his own defense, as did the fourth one. No, there were three, Your Honor, I'm sorry, there were three. So the previous two at that point. Didn't she, Your Honor, this is the private one? This is the private, this was the third one, Your Honor. And didn't it find the same as the previous two? It did. I think what you have, and what this court must defer to, and it's kind of double deference here, because you're not reviewing whether or not the competency exam was required. What you're reviewing is whether or not that justifies the delay. But even when the competency exams were ordered, it would take months to get it done. Well, it took some time, but that also wasn't objected to. There was no objection from counsel saying, what's going on here? I'm making a speedy trial motion, or I'm making a statutory speedy trial motion, or a constitutional speedy trial motion. And what you have here, Judge, is the deference that this court owes to what was happening in the district court is, first of all, Judge Scott, the magistrate saying, you're in front of me, and I see you're not getting what I'm saying. I need to send you for a competency exam. And then you have counsel, experienced counsel saying, I'm talking to him, and he doesn't seem to appreciate what I'm telling him about his defense. And say, OK, he can make a decision. Yes, I want to go to trial. I know that I'm being offered a 10-year plea. And if I go to trial, I'm going to go to jail for at least 20 years. But not understanding that that was in his best interest. And so it's not so much he's crazy, or he needs to be examined because he's going to trial, or he's insisting on going to trial. But he didn't seem to understand that this was in his best interest. And he couldn't appreciate that. And I think you do have to defer to counsel saying, look, I can't get through to this guy. But even after that, it was another how long before the trial took place? Three years? Well, and then you had the trial occurring. But then you had problems relating to Mr. Tigano Sr.'s competence. So the father's competence. That's not in front of us. Well, that's part of what happened, though. I respectfully judge. They weren't severed. They were together. Correct. They were together until the defendant's father, Tigano Sr., pled guilty, I believe, in November of 2013. Thank you. But what I'm returning to here is that this court, this was not raised below. This court should apply plain error review. You could say it wasn't raised below when every time you related to us, every time Mr. Tigano went to court, he said, I want my speedy trial rights. Is it because he didn't write it down? No, not because he didn't write it down. Because he was using the term, I want a speedy trial, at that point, at the very beginning. And this is all at the very beginning of the, this is when he went on his hunger strike, when he said, okay, I, you know, it took approximately, there was a six-month time period for filing motions and getting hearings done. And he didn't come to court. He wasn't brought to court when he thought he should have been brought to court. So he went on a hunger strike. That's when he's- What about when it was time to set a trial and the judge said, my calendar is booked. I can't squeeze this in. I always understood when I was a district judge that you had to squeeze criminal trials in. They came before everything else. And if the speedy trial clock was running, you had to pay attention to that or the indictment would be dismissed. The speedy trial clock was not running because the district court made findings under the Speedy Trial Act- That it was overwhelmed? What was the- No, the reasons were in the interest of justice. That there was, there were findings made on the record that it was in the interest of justice- That has to mean something. And we know it doesn't mean case management. Because we have decisions that say the fact that a trial court is busy or overwhelmed even, is not in the interest of justice. That's correct, Your Honor. But there is no, there was no challenge at the time. And because there was no challenge at the time, there can be no challenge before this court as to whether the district court erred in that regard. And Judge, I grant you that even if you're looking, okay, October of 2014, the trial date was set for May of 2015. Okay, so even if you take that six months and say that that was what Barker v. Wingo calls neutral delay, not attributable, certainly not deliberate delay, certainly not- His attorney wasn't available until April 15th. I believe that the attorneys did say, and I think that's correct, that the attorney did say that she was available, she could make herself available sometime in December. I believe co-counsel was unavailable. I'm sorry. In October of 14, he wants to proceed to trial. They're talking about the trial. But the attorney's not available until April. Maybe I'm wrong on that. I don't recall. The trial was scheduled for April, I guess for May 5th. May 5th, Your Honor. Yeah. Can I correct something? You said there were only three exams. There were three exams ordered by the magistrate judge, and the fourth exam was conducted by a private psychologist who said that he concurred with the previous findings. So I was correct that there were four. Right, and that was the basis, the one that they had done on their own. Right. And that concurred with the three previous. I believe you said two before. There were three official determinations from the Bureau of Prisons, the psychological unit there saying that he was competent. I'm more aware on that, just let me see if you agree, that each one of them found that he was competent to assist in his own defense. Yes, that's correct. That is correct. But I think you do have to take into consideration what appears in the record in terms of the district court's observations, the magistrate judge's observations, what is put in counsel's affidavit as to her contacts with the defendant, which certainly could cause a reasonable person to say, okay, circumstances have changed here. If I can just say one thing about plain error. I know you cut me off twice, Judge, about plain error. I'm not going to cut you off. You better finish this thought quickly. Yes, prejudice. Prejudice is a factor under Barker v. Wingo. Prejudice is a requirement under plain error. So if this court, as it should, applies plain error review to this question, the lack of prejudice, that decides the issue. That there's lack of prejudice, they can't point to any way that his ability to present a defense was at all impaired, and the result would have been different, whether this case was tried two years out or six and a half years out. You would have had an earlier appeal on the suppression issue. I don't think, I don't- That's prejudice. I mean, assuming it is a good issue. I mean, it's an issue that's worthy of an appeal. It would have come sooner. It certainly would have to be- Would it have come before or after the Supreme Court said flyovers are an invasion? No, flyovers, that existed at the time. The question, that existed when it was being litigated in the district court, the Kylo case. I didn't think Kylo was a flyover. I thought Kylo was a heat sensor on the ground. Right, it is the same principle. And they found a heat impression there. And the famous statement by Justice Scalia was that it could have been the lady of the house having her bath, rather than growing marijuana. But I thought the whole point here was that under Franks, you can knock that out, or an equivalent case, you can knock that out and still go to the question of whether there was probable cause on the rest of the warrant. And that is what the district court did in this case. It said, I'm going to avoid deciding this constitutional question about whether this infrared imaging of a commercial building violates the Kylo decision. I'm going to take that out, and I find that even considering everything that's left, there is still probable cause. And even if there wasn't, that good faith safe warrant. And that decision never was appealed, because he didn't get a chance. That's correct. It's being appealed now. And that, I think counsel argues, is at least one prejudice that can be named. Well, you have to win it, though. I mean, it has to be one. The result has to be different. You can't win it until you get into court. Understood. But the result has to be different. All right. Thank you. We'll hear. Two minutes. Tell us what the prejudice was. The prejudice is seven years of pretrial incarceration in county jails, Your Honor. There's no vocational rehabilitation educational programs like there are in federal prison. The Supreme Court has recognized that as a form of prejudice. The Supreme Court has recognized that anxiety and concern is a form of prejudice. The record substantiates that here, that Mr. Tagano went on a hunger strike. Why? Because he was expecting to go to court, and nobody showed up to pick him up. And he also, because, and this is also in the record, he was suffering from some persecutory beliefs because people were not paying any attention to his demands for a speedy trial. And so, and if I can just give an ounce of constitutional history here, because I think it adds to the weight of what precedent and the record and common sense tell us, that this extended period of pretrial incarceration is just intolerable in our system. It was intolerable at the time of English common law, which is what the speedy trial right is based on. Sir Edward Cook identified prolonged pretrial incarceration as the evil, which inspired the speedy trial clauses in our constitution, state constitution and federal. The English Habeas Corpus Act of 1679, also, as the Supreme Court has explained, is the inspiration for that right. It said that if somebody was accused of a felony and was not brought to trial within two terms, which means six months, he had to be released. This is the core of what the speedy trial guarantee is all about. And it doesn't make a difference if he's ultimately convicted in that analysis. It doesn't make a difference, Your Honor. And the Supreme Court in Barker says that. I don't have it in front of me. But it says that the consequence of this speedy trial clause is that in some cases, the guilty will go free. But that's the only available remedy. And Judge Walker, your question about did he ever ask to be released, he didn't. But that is in no way part of the speedy trial analysis. There's scholarship on this that says, gee. What I'm saying is that you're claiming the prejudice was that he was incarcerated during this period of time. And I think it bears on the question. The fact that he didn't ask for release bears on that point. I know of no authority that takes that into account. There is no remedy under the speedy trial clause to get released from prison and go out on bail. There's scholarship on this. Some scholars have argued that that should be the case. But that's not the way it works. In other words, you don't think he'd be arguing if he'd moved for release and been denied that he was trying to get out, he was trying to save himself, he was prejudiced? That's not a remedy for a speedy trial violation. It just isn't. And as you know, there are presumptions in terms of drug offenses with regard to bail. And I'm aware of no authority that says the speedy trial clause trumps that. But the Constitution is offended in all respects. And one is the question of rightly focused on prejudice. And you've made the point that his being incarcerated was prejudicial. And all I'm doing is wanting to know why, if it was so prejudicial, they didn't move to have him released. He was jumping up and down, insisting on his right to a speedy trial. And he did. He was insisting so much that they sent him for competency exams. He did file this pro se motion, which he initially styled as a habeas motion, which the judge converted into a motion. And that happened after the pretrial motions were decided, long after, contrary to what Mr. Karaszewski said. He sentenced to 240 months? Yes. Yeah. 20 years is a mandatory minimum. The mandatory 20 years. Yes. Because of the prior. Because of the prior. The sentencing judge said that the sentence was way harsher than what she thought was proper. Mr. Karaszewski, what did his father... He got time served. Time served. Yes. He pled. He pled. He pled. That's right. And that's... He was in for five years, wasn't he? Wasn't his time served five years? No, no. He was on bail, I think, essentially for the entire... There was some violation at some point. He may have been in briefly, but... No, no. He was out on bail. Absolutely. And... He had medical issues. He had some medical issues. But I just want to make clear that Mr. Togano was not so crazy as Mr. Karaszewski was trying to portray. He wanted to pursue his Fourth Amendment challenge on appeal. If he took the government's plea deal, he could not have done that. He would have given up that right. It was his right to decide whether he wanted to preserve that. And the... And you don't think that was a frivolous appeal, although... I certainly don't, because I brought it before you, Your Honor. And I actually think it's quite meritorious. But in the private evaluation that Your Honor referred to, which is on page 951 of the record... What was that evaluation? That... The date of that was July 2013, Your Honor, after the two prior competency proceedings, which had determined that he was competent. It says that Mr. Togano understood the implications of his decision. He believes that a trial will give him the opportunity to stand up for his principles, namely that his constitutional rights were violated when the search took place. He had every right to do that. A plain error review does not apply here for the reasons laid out in our brief. Excuse me. Because he preserved his constitutional claim when he... In all sorts of ways. And that's the only thing that counts. Quite frankly, even if it was plain error review, we still prevail because under each of the Barker factors, there's no reasonable dispute here. Let me just take as an example Mr. Karaszewski's argument about prejudice. His argument is there was no impairment of the defense. That's his argument. That's just flatly contrary to controlling precedent. It says you don't need impairment of defense. And as I said before, that's not even what the speedy trial... It was at the core of the speedy trial clause. So, he understood at the time of the third competency hearing... Strike that. The consent issue that the defense counsel consented to various adjournments. The issue under Barker v. Wingo is who is responsible for the delay? And in these situations detailed in our brief, 14 months of unnecessary competency hearings or even 10 months if you assume that the second and third were properly ordered. If you just look at the transportation and related delays, you have 10 months of that. You have a year of plea negotiations. You have a whole of delay in the plea negotiations. You have a whole year associated with the pretrial motions of delay, all attributable to the government. You have 10 months because the court couldn't schedule the trial because of its calendar. You add it all up. These are things that are squarely on the government. It's four years of delay. There's never been a case like this. And the fact that defense counsel, on some occasions, consents to exclusions of time under the Speedy Trial Act has nothing to do with that. I'm going to ask for a competency hearing at one point. It's obviously at odds with the client over whether to plead or not. And is not objecting to the delays during this period of time. Is acknowledging that the time is going by, but isn't doing anything aggressively to bring him to trial or to stop this. I think that bears on the question. Yes, you could say it's the government. You could say it's the court. But his own counsel was complicit. But this is the same time, Your Honor, that Mr. Togano himself is making a motion, a speedy trial motion, a habeas corpus petition, in his view, writing from the MCC where he was sent for this competency evaluation, which should never have happened. You can't say on this record that Mr. Togano didn't do at least what he was required to do to assert his speedy trial rights. I think that's absolutely clear. It's a good place to stop here. Thank you. Thank you both. Judge Winter, no more questions? No. Okay. Thank you very much. We'll reserve decision. Thank you.